## TRUE-HIXON LUMBER CO. *v.* THORNE.

(In Banc. Jan. 14, 1935.)

[158 So. 909. No. 31228.]

For prior opinion, see 155 So. 181.

**L. C. Andrews**, of Oxford, for appellant.

Lester **G. Fant, Sr.** and **Jr.**, of Holly Springs, for appellant.

James Stone & Sons, of Oxford, for appellee.

Argued orally by **L. C. Andrews** and **L. G. Fant, Jr.**, for appellant, and by **Phil Stone**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On August 13, 1931, appellee filed his declaration against appellant alleging that on May 4, 1929, appellant had made a contract with him by which he was employed by appellant at a salary of four dollars and fifty cents per day, straight time for every day, except Sunday, payable weekly; said employment to continue during the period of the operation of the planing mill of appellant at College Hill Switch, in Lafayette county. That appellee entered upon the performance of his contract and so continued until January 14, 1931, when he was wrongfully discharged by appellant. That appellant had not paid him the wages due him from September 1, 1930, to January 14, 1931, nor from January 14, 1931, to the date of the filing of his suit, and he sued for the total sum of one thousand three hundred seventy-seven dollars, alleged to be the aggregate amount due him for the two periods aforesaid.

To that action appellant filed its plea of the general issue, and a notice that although appellee was employed by appellant by the day at a stipulated amount, the terms of the employment were not as alleged by appellee in his declaration, and that under the said agreement appellant had a right to terminate the employment whenever appellant saw proper, and that appellant had exercised that right, and that appellant had paid appellee in full for every day's work done by him under the contract. The case was tried at the November, 1931, term of the circuit court, resulting in a verdict and judgment for appellee for one hundred seventeen dollars; and no appeal therefrom was taken, but the judgment was paid by appellant.

Subsequently, and on February 13, 1932, appellee filed

another declaration against appellant, declaring upon the same contract and demanding recovery against appellant for the period subsequent to that covered by the first declaration, that is to say, from August 12, 1931, to February 12, 1932. To that action appellant filed a plea of res adjudicata averring that the judgment in the first case was a complete estoppel of any further suits growing out of the alleged contract between the parties. This plea was sustained by the trial court, and the second suit was dismissed, whereupon appellee appealed to this court, with the result that it was held here in Thorne v. True-Hixon Lbr. Co., 167 Miss. 266, 148 So. 388, that the first suit was not res adjudicata of the second, and the judgment was reversed.

Soon after the above-mentioned decision in this court, appellee filed a third declaration against appellant, declaring upon the same contract and demanding recovery against appellant for the period subsequent to that covered by the second declaration, that is to say, from February 12, 1932, to June 24, 1933. When the November, 1933, term of the circuit court came on, the two last-mentioned cases were consolidated, and in the trial thereof appellee took the position that the opinion of this court in Thorne v. True-Hixon Lbr. Co., supra, was such by its terms as to compel the trial court to the conclusion that the verdict and judgment in the first case between the parties was res adjudicata upon the issue that a contract existed, and had continued to exist, between them as alleged by appellee in his several declarations, and that the only issue remaining to be tried was the amount due appellee upon the installments sued for in his second and third declarations. The trial court acceded to that view, granted a peremptory instruction in behalf of appellee, and a judgment was rendered for two thousand seven hundred seven dollars and twenty-one cents.

In resisting the contention of appellee, last above

stated, appellant succeeded in getting into the record of the last trial the complete record of the first trial, including a full transcript of the evidence, so that upon the present appeal there is now before this court, for the first time, a complete record of all that was said and done in the first trial; and, upon the examination of that record of the first trial, Division B of this Court held in its opinion delivered on May 28, 1934, reported 155 So. 181, that the verdict and judgment in the first trial were not in conformity or responsive to the issues presented therein, but was a variance therefrom, and therefore was not res adjudicata so far as any second or third suit was concerned, and reversed the last judgment.

Thereupon appellee filed his suggestion of error insisting that the opinion was in conflict with that in 167 Miss. 266, 148 So. 388, and was in contravention of the law of the case. In response to that insistence, the judgment of reversal entered by Division B was set aside, and the cause remanded to the court in banc.

An extended reconsideration of the entire record discloses that there were three principal issues tendered by the pleadings and the evidence on the first trial: First, whether appellee had a contract for four dollars and fifty cents per day, straight time, so long as appellant continued to operate its mill at the stated place, and this in turn is divisible into two issues: (a) Whether appellant had paid everything due under that contract so stated from September 1, 1930, to January 14, 1931; and (b) whether and for what amount appellee was chargeable for what he earned or could have earned at other similar employment from January 14, 1931, to August 12, 1931. Second, whether the contract or agreement was as contended for by appellant, that appellee was to be paid only for the days he actually worked, and that the employer had the right to terminate the services at any time desired by it; and this issue, in turn, is divisible into two issues; (c) whether the pay for the

days served was to be at four dollars and fifty cents per day or at that rate less two dollars per week for house rent, claimed by the employer; and (d) whether all the days actually worked were actually paid for. Third, whether the rate of pay was to be four dollars and fifty cents per day, straight time, with the privilege nevertheless to the employer to dispense with the services at any time desired by it.

Taking up these issues, the evidence shows, without dispute, that there was paid to appellee for the period from September 1, 1930, to January 14, 1931, the aggregate sum of three hundred twenty dollars and eighteen cents. If his contention were true that he was to be paid four dollars and fifty cents per day, straight time, his pay for that period would have amounted to five hundred twenty-two dollars, and if we deduct therefrom the sixteen days that appellee admits he was in the hospital, or seventy-two dollars, there would yet have been due him four hundred fifty dollars. He was paid three hundred twenty dollars, which leaves a balance of one hundred thirty dollars. The verdict and judgment was for one hundred seventeen dollars. But if his contention was further true that his contract was to last as long as appellant operated its mill at that place, there would be due him from January 14, 1931, to August 12, 1931, the further sum of approximately eight hundred twenty dollars. Against this and for the same period of time, the evidence shows, without dispute, that he had been able to obtain other employment only from May 13, 1931, to August 12, 1931, at one dollar per day, including Sundays, or approximately ninety days. Deducting this ninety dollars from eight hundred twenty dollars would leave due him, for the period last aforesaid, according to his contention, seven hundred thirty dollars. Does a verdict of one hundred seventeen dollars respond to that contention?

It is said, however, that the verdict and judgment were

in any event, and necessarily, an adjudication that there was a contract of employment between appellant and appellee. Conceding, for the sake of the argument, that this is true, the questions yet remain as to what kind of contract it was, what were its terms, and particularly what were its provisions as to when and how it should be terminated. It is elemental that a jury, in weighing the evidence, in reconciling its conflicts, in considering the reasonableness of the various features thereof in the light of all the surrounding circumstances and conditions, is not bound to accept in its entirety the evidence for either side, but may believe and accept, in part, the evidence in behalf of plaintiff and, in part, that for the defendant, and make up their verdict as a composite of the evidence for both sides. In consequence, so far as we can tell from this record, the jury may have believed and accepted the evidence of appellee that the contract was for four dollars and fifty cents per day, straight time, so long as he remained in the employment, and at the same time may have believed and accepted the evidence of appellant that appellant had the right to terminate the employment at any time it desired.

We have thus developed the fact that it cannot be said with any dependable certainty upon which of the several issues and admixtures of issues in the first case the jury returned its verdict for one hundred seventeen dollars; which brings into application the well-settled rule that where a party to a former suit relies upon the judgment in that suit as being conclusive upon an issue in a subsequent suit between the same parties, the party so asserting must show that it is certain that the precise issue of fact, so relied on, was actually determined in his favor in the former suit; and the rule is, further, that a judgment which may have resulted from a determination of either out of two or more separate issues does not constitute an adjudication as to any of them, unless it is made clearly to appear from

the record in the former case that the particular issue as to which the rule of res adjudicata is invoked was, in fact, actually and undoubtedly adjudicated in the former action. DeSollar v. Hanscome, 158 U. S. 216, 15 S. Ct. 816, 39 L. Ed. 956, 959; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; 15 R. C. L., p. 980; 34 C. J., pp. 1072-1075. Our court is definitely committed to this doctrine by Greene v. Merchants' & Planters' Bank, 73 Miss. 542, 550, 19 So. 350, 352, where it is said: "The verdict proves nothing more than that the jury found for the defendant on one or the other issues; but on which one we do not know. Under such circumstances the rule is that the whole matter remains at large, and there is no estoppel." The conclusion is inescapable, therefore, that the verdict and judgment in the former suit is not res adjudicata in subsequent suits of the issue relied on here by appellee, to-wit: That he had a contract for four dollars and fifty cents per day, straight time, and that this contract was not terminable by appellant so long as it continued to operate its mill.

But it is argued that we are now precluded from the above-stated conclusion by the language of this court in the former appeal, Thorne v. Lumber Co., 167 Miss. 266, 148 So. 388. That opinion holds, as we hold here, that the judgment in the first suit is not res adjudicata of subsequent suits. We have examined the record as it existed before the court when that opinion was rendered. Neither the pleadings nor the evidence in the first suit was made a part of the record in Thorne v. Lumber Co., supra. There was in that latter case nothing before this court of the facts of the first suit, except the verdict and judgment therein and the further bare fact that the two suits were between the same parties and involved the same general subject-matter.

The positive authority of any opinion of an appellate court is coextensive only on the facts on which it is founded. 15 C. J. 941. As tersely said in Pass v. McRea,

36 Miss. 143, 148, "it has become a settled rule that all adjudications are to be considered only in connection with, and as explained by, and limited to, the state of circumstances appearing in the record." And where on a second appeal an additional state of facts, materially pertinent to the decision on the second appeal, is shown of record, the former determination is not controlling. 4 C. J. 1101, and the numerous authorities there cited. On a second appeal the court decides according to the record then before it, and not upon the record of a previous appeal. Gulf & Ship Island Railroad Co. v. Simmons, 153 Miss. 327, 337, 121 So. 144.

The parties to this litigation have all along well known that the record in the first appeal here was stripped bare of the actual facts in respect to the trial of the first case; and the record in that first appeal shows, further, that this court in a memorandum to counsel, dated July 28, 1933, while the suggestion of error therein was pending, called the attention of counsel to the fact "that the record seems not to disclose the exact issue that was tried in the case which resulted in the judgment here plead in bar of plaintiff's cause of action," and the record shows also that, in response to that observation of the court, no effort was made by either side to clear up that omission in the record as it then existed.

We, therefore, overrule the suggestion of error; reinstate our former judgment of reversal; and remand the cause for a new trial. But because the other matters dealt with the opinion of Division B, delivered on May 28, 1934, have been by the parties befogged in their several contentions in respect to the issue of res adjudicata, we withdraw that opinion in its entirety and leave all questions in the pending consolidated action, other than the one point dealt with herein, to be litigated between the parties as if nothing had ever been said about them here.

Suggestion of error overruled, and reversed and remanded.

McGowen, J., delivered a dissenting opinion.

Dissents are distasteful, but in this case I cannot agree with the main opinion, for the reason that, in my judgment, the whole case remains unsettled. The material part of the declaration in this case is as follows:

"For that, whereas, on May 4, 1929, the defendant being then and there engaged in the operation of planing mill at College Hill Switch in Lafayette county, Mississippi, entered into a contract of employment with the plaintiff herein whereby the defendant agreed and then and there employed the plaintiff, H. W. Thorne, to operate said planing mill and agreed to pay the plaintiff the sum of four dollars and fifty cents per day, straight time, for every day except Sunday, payable weekly, and furnish the defendant a residence for the occupancy of plaintiff and his family together with water, wood and fuel necessary for the occupancy of said residence for the plaintiff and his family, the said house rent, water, wood and fuel to be furnished, being of the value of twenty dollars per month. Said employment to continue during the period of operation of the said planing mill at the point aforesaid by the defendant, which said period of operation was dependent upon the happening of several contingencies and therefore unknown and impossible of definite determination by the parties to said agreement at said time.

"Plaintiff alleges that after the consummation of said contract which was accepted and understood thoroughly by both plaintiff and defendant, the plaintiff entered upon his duties under the terms of said contract and continued in the service of the defendant continuously until January 14, 1931, at which time the defendant herein without any cause or reason whatsoever discharged the plain-

tiff from the service of the defendant and thereafter refused to permit the plaintiff to perform the work and labor contracted for or to carry out his part of the contract in any manner whatsoever since said date.

"Plaintiff alleges that on and after September 1, 1930, the defendant refused to pay the plaintiff for his services at the rate above specified in said contract and agreement. That on February 23, 1931, the defendant notified the plaintiff to vacate the premises heretofore occupied as a residence and surrender possession thereof to the defendant. That at that time it was impossible for the plaintiff to rent a residence and comply with said notice and it was not until May 25, 1931, that the plaintiff was able to procure a residence and remove his family and surrender occupancy of said residence as insistently demanded by the defendant.

"Plaintiff alleges that he has stood ready, willing and anxious to carry out his part of the contract between the parties hereto, but the defendant on the other hand has refused to carry out its part of the contract or permit the plaintiff to render the service contracted for after the date aforesaid.

"Plaintiff now charges that on account of the breach of contract by the defendant and the positive refusal of the plaintiff to carry out its contract aforesaid, the plaintiff has been damaged in the sum of one hundred seventeen ($117) dollars per month salary from September 1, 1930, to August 12, 1931, amounting to one thousand three hundred twenty-seven ($1327) dollars, and also the sum of twenty ($20) dollars per month additional salary covering the value of house rent, wood, water and fuel from May 25, 1931, to August 12, 1931, amounting to fifty ($50) dollars and the defendant, although often requested, has refused and still refuses to pay the same, and therefore the plaintiff brings this his suit and asks judgment of and from the defendant in the total sum of one thousand three hundred seventy-seven ($1,-

377) dollars, together with interest thereon at six (6%) per cent from the due dates thereof and all costs herein."

To this declaration True-Hixon Lumber Company filed a plea of the general issue, and notice thereunder that Thorn was employed by the day for a stipulated amount, on an oral contract, terminable at will by either party, and that this contract had been fully performed by the lumber company by payment of the amount due thereon; and further set up that plaintiff was discharged because of incompetency.

The judgment rendered after the hearing of the evidence and the verdict was as follows: "This cause is this day heard by the court and the jury of the regular panel, all parties being in court and represented by counsel and after hearing the evidence and receiving the instructions of the court and hearing the arguments of counsel, the jurors retired and returned into court this verdict, 'We the jurors find for the plaintiff and fix the amount at one hundred seventeen dollars. It is therefore the judgment of the court that the plaintiff, H. W. Thorne do have and recover of the defendant, the True-Hixon Lumber Company, a corporation, the sum of one hundred seventeen dollars and all cost in this behalf expended for which let execution issue.' "

The pleadings, therefore, presented the single issue of whether or not Thorne had a contract with the lumber company for straight time at the rate of four dollars and fifty cents a day, Sundays excepted, from September 1, 1930, until August 12, 1931. The defendant's plea and notice joined issue thereunder, and alleged, in short, that the contract was that it was paying only for the days Thorn actually worked. The judgment, on this single issue, was based upon the verdict of the jury in behalf of the plaintiff for one hundred seventeen dollars, which clearly established a finding by the jury that the contract existed, as contended by Thorne.

But the main opinion has looked to the evidence in

the case, and seems to deduce therefrom that some other issue might account for the verdict of the jury in this case. A close examination of the record of the trial of the first case on November 9, 1931, discloses that Thorn testified substantially to the contract as alleged in the declaration, and to his discharge on January 12, 1931; and his evidence was pointed at'the time embraced within the dates set out in the declaration, counting straight time. He did not testify as to how many days he actually worked from September 1, 1930, until January 14, 1931, the date of his discharge; and his testimony presented to the jury only one issue, straight time according to the allegations of the declaration. Mr. Alford, manager of the lumber company, testified positively and unequivocally that they had no such contract as that alleged in the declaration, but that Thorne was to work by the day, and was to be paid by the day for the days he actually work; and testified in detail as to the time checks and the checks given in payment. He testified that during the year 1930, and until January 14, 1931, the lumber company had paid Thorne for the time he actually worked, in accordance with Alford's version of the agreement. The amount of time that Thorn actually worked during the period from September 1, 1930, to the time of his discharge, is not disputed by Thorn, nor is the payment therefor in dispute, so far as the evidence is concerned. If we look to the instructions of the court, they attempted to submit only the one issue—whether the contract between the parties existed, as contended by Thorne. Hence it seems to me to be conclusive that the judgment of the court, based upon the verdict of the jury, indicates that it was of the opinion that the contract existed, as contended by Thorne, and that it was res adjudicata as to that issue.

In Thorne v. True-Hixon Lbr. Co., 167 Miss. 266, 148 So. 388, this court held, in a second suit on this same contract, that several suits might be maintained for ac-

crued wages payable in installments, especially where the termination of employment by the contract depends on contingencies rendering a definite determination thereof impossible, and that the contract in this case was not invalid, and that case was remanded for trial, and there was no res adjudicata in favor of the lumber company.

We further held in that case that the verdict alleged actually to have been rendered could not be substituted for, or considered as, the verdict of the jury, to contradict the judgment entered by the court, let it be remembered that the first judgment for one hundred seventeen dollars rendered in this cause was not appealed from, but was allowed to become final, and was paid by the lumber company. If the so-called verdict can now be resorted to, then it establishes beyond peradventure that the jury did not render a verdict for any time prior to January 14, 1931, the date of Thorne's discharge. That verdict is in this language: "We, the jury, find for the plaintiff and fix the amount at one hundred seventeen dollars. *We don't consider that a contract existed between the True-Hixon Lbr. Co. and the plaintiff, but think there is a strong probability that the plaintiff did not have sufficient notice.*"

The italicized words were eliminated therefrom by the court in entering its judgment. Whether or not that action of the court was error, it became final and fixed, and is not now subject to review. I think we correctly held in the reported case in 167 Miss. 266, 148 So. 388, that this verdict was properly excluded in that case, and it cannot be resorted to here. It is therefore my opinion that the issue of the existence of the contract was determined favorably to Thorne, and was in fact actually and undoubtedly adjudicated in the former case; and this is not contrary to Greene v. Merchants' & Planters' Bank, 73 Miss. 542 et seq., 19 So. 350.

In the record here under consideration as res adju-

dicata on the issue of the liability of True-Hixon Lumber Company, the only time fixed as to when Thorne was in the hospital for an operation is found in the testimony of the manager of the company, wherein he fixed these dates as prior to June, 1930. So the figures as to time lost in the hospital for the period subsequent to September 1, 1930, in my judgment are incorrect, and are not persuasive that the jury returned a verdict for a sum found to be due Thorne for the period beginning September 1, 1930, and ending January 14, 1931.

I conclude, therefore, that the issue was submitted to the jury on whether or not the contract, in its entirety, existed as contended by Thorn; and that the judgment of the court for the plaintiff, even though for an insufficient sum, was res adjudicata of the issue of liability on that contract.